573 So.2d 1335 (1990)
Edward TURNER, Jr.
v.
STATE of Mississippi.
No. 89-KA-0841.
Supreme Court of Mississippi.
December 12, 1990.
*1336 Brehm T. Bell, Joe Clay Hamilton, David H. Linder, Hamilton & Linder, Meridian, for appellant.
Mike C. Moore, Atty. Gen., Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
Today's appeal arises from a sale of cocaine and the accused claims that his conviction was impermissibly tainted by two evidentiary rulings at trial. We have carefully reviewed the record and in particular the points charged as error and find that the first was not error at all but that the second was erroneous, only harmlessly so.
We affirm.

II.
Edward Turner, Jr. was born March 13, 1960, in Colorado, and grew up in Meridian, Mississippi. His father abandoned him at an early age and moved to California. Somewhat later Edward and his mother tried California for a year but came back to Meridian. As an eleven-year-old, Turner was doing fine in school but was experiencing problems and participated in a period of a regimen of counseling. He described his father as brutal. Reports in his record at age eleven describe Turner as "hostile", "aggressive", "emotionally tense", but also "a bright child, who reads very excellently" and who "appears to have the makings of an excellent leader in the years to come". After graduating from high school, Turner remained in the Meridian area. By late 1987, all promise had faded as Turner, by his own admission, had a serious drug problem marked by regular use of cocaine.
On May 18, 1988, Lawrence Vaughan served as an undercover agent for the Mississippi Bureau of Narcotics and was covertly working in Lauderdale County. The Bureau had information that drug trafficking was occurring at an establishment known as "Cat's Den" at 20th and 22nd Streets in Meridian and also known "Brazeale's Grocery and Cafe." On the afternoon of May 18, 1988, a little after 1:00 o'clock, Agent Vaughan and his confidential informant, Anthony Lewayne Cole, then age 21, went to the "Cat's Den." They pulled up to the building and observed another car parked there  a yellow Z-28 Camaro with the vanity tag "ET2." *1337 The car was registered to Edward Turner, Jr.
Agent Vaughan had no knowledge of the identity of any particular individual there, but Anthony Cole, the CI, knew Turner. As Vaughan and Cole got out of their car, a man emerged from the Camaro and came toward their car. Cole approached him and asked if he was "holding," that is, if he had any drugs in his possession. The man answered that he had some "rocks," meaning cocaine. Vaughan got into the act at this point and
I walked up to him and questioned him about it as far as the price of them and ... I believe it was a $100, Sir.
Vaughan then purchased five "rocks" from the man, paying $100. Later in court Vaughan identified his seller as Edward Turner. The fruits of the buy were then sent off to the Crime Lab to be analyzed and were found to contain cocaine.
Pursuant to Mississippi Bureau of Narcotics (MBN) custom and practice, Turner was not arrested at the time nor advised that he was a suspect. Instead, Turner was allowed to go on about his business until August 1, 1988, when the Lauderdale County grand jury returned an indictment charging Turner with the sale of cocaine on May 18, 1988. See Miss. Code Ann. §§ 41-29-115(A)(a)(4) and -139(a)(1) (Supp. 1988). The case was called for trial on February 6, 1989, in the Circuit Court of Lauderdale County, at the conclusion of which the jury found Turner guilty as charged. Turner moved for a judgment of acquittal notwithstanding the verdict, or, in the alternative, for a new trial on plethora of grounds, and, on April 11, 1989, the Circuit Court granted the motion for a new trial, set aside the judgment of conviction, and restored the case to the active docket of the court.
The case was again called for trial on May 15, 1989. The principal issue at trial was the identification of the person Agent Vaughan made the buy from on May 18, 1988. Turner took the witness stand and admitted his drug problem but denied the sale. The jury wasn't buying but instead convicted Turner and on June 7, 1989, the Circuit Court sentenced Turner to a term of sixteen (16) years in the custody of the Mississippi Department of Corrections plus payment of a fine of $5,000 plus statutory fees and court costs. Thereafter the court denied Turner's post-trial motion, and this appeal has followed.

III.
Turner makes no challenge to the sufficiency of the evidence to support the judgment that he stand convicted of the sale of cocaine, nor could he credibly. Agent Vaughan testified fully and credibly that he personally witnessed Turner committing each element of the offense of sale of cocaine. Given our familiar and limited scope of review of such matters, the Circuit Court correctly denied Turner's post-trial motion for judgment of acquittal notwithstanding the verdict. See, e.g., Doby v. State, 557 So.2d 533, 535-36 (Miss. 1990); Temple v. State, 498 So.2d 379, 381 (Miss. 1986); Gray v. State, 487 So.2d 1304, 1311 (Miss. 1986); Clemons v. State, 482 So.2d 1102, 1105-06 (Miss. 1985); Johnson v. State, 461 So.2d 1288, 1293-94 (Miss. 1984).
Turner does, however, point to a pair of somewhat related evidentiary rulings at trial and urges that each was error and that together or singly they stacked the deck against him on the critical issue of identification. Turner made no serious effort to defend the charge on any grounds other than that he was not the individual who sold the cocaine Agent Vaughan bought on May 18, 1988. Turner said that as many as five people had borrowed and driven his car at various times during May of 1988, and this explains his vehicle being at Cat's Den. He wholly denied that he was present on the scene or that he sold any drugs to Vaughan or to anyone else.
The case for the prosecution rests principally on the testimony of Agent Vaughan. Anthony Cole, the confidential informant, did not testify. Although the buy made on the early afternoon of May 18, took place in a matter of three or four minutes, Agent Vaughan said he got a very good look at Turner and was positive the man who sat in the courtroom a year later was the man from whom he purchased the cocaine. *1338 Vaughan said that he and Cole went back to the "Cat's Den" on the next day  May 19, 1988  and he saw Turner again and in describing this occasion, Vaughan gave testimony that has generated the first issue Turner tenders on appeal.[1] On this second occasion, Vaughan and Cole encountered Turner "three or four houses up from the original place," the "Cat's Den." Cole got out and approached Turner, leaving Vaughan in the passenger seat in Cole's car. It was again in mid-afternoon, broadopen daylight. Vaughan said that he had sat there in the car "in front of that house for ten or fifteen minutes almost." He said that Turner was in his view "a couple of minutes." Before he had seen Turner, Vaughan was sitting in the car, waiting upon a woman from whom they expected to make a buy. Turner was outside of the car directly across the street.
In describing what happened, Vaughan testified
He was  the confidential informant [Cole] had a small car and the way it was made it was  the way the top was made on it, it was obstructing my view momentarily. I could hear him talking and I asked . .. Mr. Cole, who was that?
Defense counsel promptly objected, and the Circuit Court overruled the objection. Vaughan then reported "Mr. Cole said, `that's him. That's E.T.'" After that, a few moments later, on May 19, Vaughan saw the man Cole was talking to and recognized him as the same man he had bought cocaine from the day before. In response to the question whether there was any doubt in his mind that the man he saw on the afternoon of May 19, was the same person he had purchased cocaine from on May 18, Vaughan answered "No, Sir."
Turner argues that the Circuit Court erred in allowing Vaughan to state what Cole had told him. Turner argues that the statement "That's him. That's E.T.," was hearsay within Rule 801(c), Miss.R.Ev., and inadmissible as such. Rule 802, Miss.R.Ev. on his initial premise, Turner is correct, for the statement, "That's him. That's E.T.," was certainly one made by a person other than the witness while testifying at trial and appears to have been offered into evidence to prove the truth of the matter asserted, that is, that the person Cole was talking to was "E.T."
The prosecution answers that the statement was not hearsay at all, that it was a statement made to explain the reason for a later action. See Alford v. State, 508 So.2d 1039, 1042 (Miss. 1987); Swindle v. State, 502 So.2d 652, 657-58 (Miss. 1987); McGowan v. State, 375 So.2d 987, 990 (Miss. 1979). This rule of non-hearsay imports an objective test. The question is not the actual subjective state of mind of the prosecuting attorney, much less of the declarant, but rather a matter of how a reasonable objective observer would under the circumstances be likely to perceive the statement. What the contested statement is supposed to "explain," according to the prosecution, is that Vaughan made a mental note of it and later observed Turner on the scene. The point escapes us. Any reasonably intelligent, objective observer, e.g., a juror, hearing this statement would assume only that it was offered for the purpose of proving that the man Cole was observing was in fact E.T., the defendant, Edward Turner.
We hold the statement at issue hearsay and that its receipt into evidence made be defended only if it fell within one of our accepted hearsay exceptions. We find such an exception in Rule 803(1), Miss.R.Ev. which provides that hearsay statements of present sense impression are likely to possess sufficient accuracy that they should not be excluded by the hearsay rule.
Present sense impressions are:
... a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter.
We have an apparent fit. The statement Cole made described and identified the person *1339 Cole was talking to while he was perceiving and talking to this individual. The official comment to Rule 803(1) explains that this exception to the hearsay rule:
... is based on the theory that the contemporaneous occurrence of the event and the statement render it unlikely that the declarant made a deliberate or conscious misrepresentation.
Miss.R.Ev. 803(1). Applied to these circumstances, the idea is that it would be extremely unlikely that one such as Cole, while looking at and talking to Edward Turner, would in answer to the question, "who is that" answer with the name of some other person. Of course, there is always the possibility that Cole may be mistaken in his identification but that is the same human frailty that would be present if Cole himself were appearing at trial and stating that he was talking to E.T. on the afternoon of May 19, 1988. We hold that the statement at issue is admissible within the present sense impression of our hearsay rule. Evans v. State, 547 So.2d 38, 40-41 (Miss. 1989); Marks v. State, 532 So.2d 976, 982 (Miss. 1988); Peterson v. State, 518 So.2d 632, 640 (Miss. 1987).
Parenthetically, we note, in the context of Turner's grave concern regarding identification evidence at trial, that Vaughan testified that a few moments after the moment at issue, he was able to observe the person Cole was talking to "for a couple of minutes" and that he was positive the person was the same one he had purchased the cocaine from the day before. Even if we were inclined to find error in the Circuit Court's ruling on this point, we would certainly hold it harmless error.

IV.

A.
Once the Court admitted, through Agent Vaughan, Cole's hearsay identification, Turner sought to impeach Cole's credibility by showing Cole's prior convictions. The record reflects that on August 17, 1988, Cole was adjudged guilty of forgery to obtain a thing of value by signature, Miss. Code Ann. § 97-19-39 (Supp. 1988) and that on August 8, 1985, Cole had been adjudged guilty of grand larceny, both convictions having been entered in the Circuit Court of Lauderdale County, Mississippi. These convictions would certainly have been available for counsel to use for impeachment had Cole appeared as a witness at trial. Miss.R.Ev., Rule 609(a). The Circuit Court overruled Turner's evidentiary proffer but allowed the records of Cole's prior convictions to be marked for identification and made a part of the record on appeal.
The present point turns on Rule 806, Miss.R.Ev. That rule provides:
When a hearsay statement, or a statement defined in Rule 801(d)(2), (C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if the declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with his hearsay statement, is not subject to any requirement that he may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine him on the statement as if under cross-examination.
Rule 806 has been read to allow impeachment of hearsay declarant's by the use of their previous convictions pursuant to Rule 609 of the Rules of Evidence. United States v. Newman, 849 F.2d 156, 161-63 (5th Cir.1988). Obviously the grand larceny conviction falls within the rule, and the only question would seem whether the subsequent conviction for forgery within § 97-19-39 is a crime within Rule 609(a)(2), to-wit: a "crime ... involved dishonesty or false statement, regardless of the punishment." Section 97-19-39 reads:
Every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by another false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable *1340 thing, upon conviction thereof, shall be punished . ..
We do not see how it can be seriously contended that a conviction of this offense does not fall within Rule 609(a)(2). The Circuit Court erred when it refused Turner's proffer.

B.
Beyond this, however, it seems rather apparent that the error was at best harmless. Cole's credibility was technically subject to impeachment under Rule 806. Cole's prior convictions for grand larceny and forgery were technically adequate impeaching evidence under Rule 609(a). The testimony that is attributed to Cole is but four words: "That's him. That's E.T." The fact that the jury did not hear that the person who uttered those four words was a twice-convicted felon strikes us a practically remote from how it would approach the totality of the evidence in this case. Certainly nothing in this error undermines our confidence in either the correctness or the verdict or the fairness of the process. Nothing before us on this issue gives us the slightest basis for believing that, by keeping Anthony Cole's criminal record from the jury, the Circuit Court denied Edward Turner his substantial right to a fair trial. See Miss.R.Ev., Rule 103(a); Ponthieux v. State, 532 So.2d 1239, 1248 (Miss. 1988).
CONVICTION OF SALE OF COCAINE AND SENTENCE OF SIXTEEN (16) YEARS IMPRISONMENT, PAYMENT OF $5,000 FINE, PAYMENT OF CRIME LAB FEE OF $100.00 AND COURT COSTS OF $117.50, AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] Vaughan admitted that at one point he misdescribed his seller in a discussion with Turner's lawyer but explained this by telling that on May 18, 1988, he made three undercover buys and at another point he inadvertently and unintentionally got Turner mixed up with another drugtrafficker, Dwight Wilson.