799 So.2d 118 (2001)
Gary HOLLINS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00799-CO.
Court of Appeals of Mississippi.
August 21, 2001.
Rehearing Denied November 6, 2001.
*120 Deborah J. Gambrell, Hattiesburg, Attorney for Appellant.
Office of the Attorney General by Charles W. Maris, Jr., Jackson, Attorney for Appellee.
Before KING, P.J., LEE, and CHANDLER, JJ.
CHANDLER, J., for the Court:
¶ 1. Gary Hollins was convicted by a jury for the sale or transfer of a Schedule II controlled substance in violation of Miss. Code Ann. § 41-29-139(b)(1) (Rev.1993). The Circuit Court of Pearl River County sentenced him to twenty-five years, with ten years suspended and a fine of $3,000. Aggrieved by his conviction, Hollins cites the following issues on appeal: (1) the evidence presented at trial was insufficient to establish the crime charged and the jury's verdict was against the overwhelming weight of the evidence and (2) the court committed reversible error by submitting a jury instruction concerning the culpability of an accomplice when Hollins was indicted as a principal. Finding no error, we affirm.

FACTS
¶ 2. On November 24, 1998, Gary Hollins, Defendant, and Roderick Jackson were standing in front of their homes in Picayune, Mississippi, when a woman in a pickup truck approached them and asked if they had "anything." Hollins and Jackson were not aware that the woman was Susan Taylor, an undercover agent for the Mississippi Bureau of Narcotics. Taylor wore a body wire and had a video camera concealed in her vehicle. When Taylor approached Hollins and Jackson and asked if they had "anything", they replied no, but then instructed her to make the block. She drove to the end of the block and the pair walked down and met her. As they approached Taylor, Hollis and Jackson agreed that Hollins would supply the drugs and they would share the money from the sale. Jackson approached the vehicle and Agent Taylor asked him for a "forty," meaning she wanted to purchase forty dollars of crack cocaine. Jackson turned his back to Taylor and she heard him tell Hollins, "she wants a forty." Hollins gave Jackson two rocks of crack cocaine. Jackson then turned around and handed her a rock of crack cocaine. She repeated that she wanted a forty and Jackson handed Taylor a second rock. Taylor gave Jackson two twenties for the drugs and left.

LAW AND ANALYSIS

I. WAS THE EVIDENCE PRESENTED AT TRIAL SUFFICIENT TO ESTABLISH THE CRIME CHARGED AND WAS THE JURY'S VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 3. Hollins argues that because there was no hand-to-hand exchange of an illegal substance between him and Agent Taylor, he could not be guilty of a selling or transferring the drugs. Since there was no direct sale or transfer of illegal drugs, Hollins argues that the State failed to prove a required element of the crime charged. Because the State failed to prove all of the elements of the crime, Hollins argues that the trial judge should have either directed a verdict in his favor or granted his JNOV motion. Hollins also argues that the jury's verdict was against the overwhelming weight of the evidence. He avers that the verdict hinged on credibility issues. Hollins claims that the testimony of his co-defendant, Roderick Jackson, should be discredited because of alleged contradictions *121 in the testimony. It is these contradictions that Hollins argues supports his argument that the jury's verdict was against the overwhelming weight of the evidence.
¶ 4. The State argues that a constructive sale took place between Hollins and Agent Taylor. The State further asserts that the jury is the ultimate arbiter of credibility and the verdict should be upheld.
¶ 5. Hollins's first assignment of error attacks the sufficiency and the weight of the evidence presented at trial. Whether the evidence is legally sufficient is an argument that is raised by a motion for a directed verdict or a JNOV. McClain v. State, 625 So.2d 774, 781 (Miss.1993). In deciding whether the prosecution has presented sufficient evidence to sustain the verdict, the court should accept as true all credible evidence consistent with the defendant's guilt and the State must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Id. A reviewing court should only reverse where, with respect to one or more of the elements of the offense charged, the evidence is such that reasonable and fairminded jurors could only find the accused not guilty. Wetz v. State, 503 So.2d 803, 812 (Miss.1987).
¶ 6. In the case sub judice, the State established a prima facie case that Hollins sold or transferred illegal drugs to Agent Taylor through the testimony of the agent and Roderick Jackson. Hollins argued that Agent Taylor's testimony was unhelpful because she did not testify as to an exchange of drugs between the two of them. However, the State established a constructive sale between Agent Taylor and the defendant. In Turner v. State, 573 So.2d 1340 (Miss.1990), the defendant arranged for a sale between an undercover agent and a confidential informant and another seller. Id. at 1341. The sale was originally to be between Turner and the agent, but because the agent arrived after the agreed upon time, Turner had taken the drugs back to a safe spot. The court found that Turner aided and abetted in the sale and was guilty as a principal. Id. As the court in Turner noted, it is not necessary that the defendant exercised dominion or control over the drugs; simply that he aided and abetted in the sale is enough to make him guilty as a principal in the crime. Id. "If on this evidence Turner has committed no offense, it would be a simple matter for drug dealers to send flunkies to make their deliveries and thus avoid prosecution and punishment." Id.
¶ 7. A helpful extension of this theory is found in York v. State, 751 So.2d 1194 (Miss.App.1999). In this case, the Mississippi Supreme Court adopted the idea of "constructive transfer" from Roberts v. State, 866 S.W.2d 773 (Tex.Ct.App. 1993). In York, the defendant, like Hollins, argued that the State failed to prove he had sold controlled substances to an undercover agent because there was no hand-to-hand exchange. York, 751 So.2d at (¶ 5). The supreme court rejected York's arguments and adopted the definition of constructive transfer from Roberts. Id. In Roberts, an undercover agent paid the defendant for drugs that were transferred from the defendant to an informant (present at the exchange), who gave the drugs to the agent. York, 751 So.2d at (¶ 8); Roberts, 866 S.W.2d at 778. The defendant claimed that because the informant actually transferred the drugs, there was insufficient evidence to convict him of selling drugs to the agent. The Texas court rejected that argument and found that constructive delivery had occurred. York, 751 So.2d at (¶ 9); Roberts, 866 S.W.2d at 778. It defined constructive delivery as "the transfer of a controlled substance either belonging to the accused or under his control, by some other person or agency, at the instance or direction of *122 the accused." York, 751 So.2d at (¶ 9); Roberts, 866 S.W.2d at 778. A constructive transfer is proven by showing that before the delivery, the transferor had either direct or indirect control of the substance transferred, and the transferor knew of the existence of the transferee. York, 751 So.2d at (¶ 9); Roberts, 866 S.W.2d at 778. Since Roberts had knowledge of the transfer and of the undercover agent's existence, he was found to have constructively transferred the drugs. York, 751 So.2d at (¶ 9); Roberts, 866 S.W.2d at 778.
¶ 8. The facts of the above cited cases are like to the one under consideration. Hollins handed the drugs to Jackson who then transferred them to Taylor. Jackson received the money from Taylor and then turned and gave Hollins half the proceeds. Hollins had knowledge of the transfer and he participated in the transaction as required by Roberts and York. The State established a constructive sale or transfer of the drugs to Agent Taylor from Hollins. Thus, it established all of the elements of the crime charged and the evidence was sufficient to survive a directed verdict and a JNOV motion.
¶ 9. Hollins also argues that the verdict was against the overwhelming weight of the evidence. A motion for a new trial is used to challenge the weight of the evidence. McClain, 625 So.2d at 781. The decision to grant a new trial rests in the sole discretion of the trial court. Id. Such a motion should only be granted when the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. Wetz, 503 So.2d at 812. This Court, on appeal, will reverse and order a new trial only upon a determination that the trial court abused its discretion, accepting as true all evidence favorable to the State. McClain, 625 So.2d at 781.
¶ 10. The crux of Hollins's argument that the verdict was against the overwhelming weight of the evidence centers upon the credibility of the witnesses. Hollins attacked Jackson's testimony as unreliable because of alleged contradictions contained in the testimony. A reviewing court need not concern itself with issues of credibility. It is for the jurors to resolve conflicts in testimony. They may accept or reject any utterances they hear based upon hearing and observing the witnesses as they testify. Jackson v. State, 614 So.2d 965, 972 (Miss.1993); Gandy v. State, 373 So.2d 1042, 1045 (Miss.1979). The reviewing court cannot and need not determine which witness or testimony the jury believed or disbelieved; it is enough that the conflicting evidence presented a factual dispute for jury resolution. Jackson, 614 So.2d at 972; Gandy, 373 So.2d at 1045. "The jury is the sole judge of credibility of witnesses and the jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict." Billiot v. State, 454 So.2d 445, 463 (Miss.1984); Harrigill v. State, 381 So.2d 619, 623 (Miss.1980); Gathright v. State, 380 So.2d 1276, 1278 (Miss.1980).
¶ 11. Obviously the jury accepted the testimony of Taylor and Jackson. Accepting as true all evidence favorable to the State, we find that the trial court did not abuse its discretion in overruling Hollins's new trial motion.

II. DID THE COURT COMMIT REVERSIBLE ERROR BY SUBMITTING JURY INSTRUCTION NO.10 (S-12) WHICH WAS AN INSTRUCTION ABOUT THE CULPABILITY OF AN ACCOMPLICE WHEN HOLLINS WAS INDICTED AS A PRINCIPAL?
¶ 12. Hollins argues that instruction S 12 was submitted in error because he was indicted as a principal, not an *123 accomplice. The jury instruction complained of states as follows:
The Court instructs the jury that an accomplice is someone who prior to or during the commission of a crime, assisted, aided or abetted another person with the purpose of promoting or facilitating the commission of said crime and is charged by said act as a principal to said crime.
Therefore, if you believe from the evidence and the testimony in this case beyond a reasonable doubt that on or about the 24th day of November of 1998, in Pearl River County, Mississippi, Gary Hollins assisted, aided or abetted Roderick Jackson or any other person before or during the commission of the crime of sale of a controlled substance, cocaine, a schedule II controlled substance, in this case defined and set out in the other instructions, with the purpose of promoting or facilitating said crime, then you shall find the defendant, Gary Hollins, who is charged as a principal to said crime, guilty as charged.
He contends that the instruction gave the jury more information than it needed and served to confuse the issues. This argument is without merit.
¶ 13. In Hoops v. State, 681 So.2d 521, 533 (Miss.1996), the court defined an aider or abettor as one who is present at the commission of the crime and aids, counsels, or encourages another in the commission of that offense. The court stated that an aider or abetter is equally guilty with the principal offender. In In Interest of J.P.C. v. State, the court stated that although a person engaged in a criminal act may not have committed all of the elements of the crime, he may be punished for that crime if it can be shown that he directly aided or abetted his accomplice(s) in the commission of the crime. In Interest of J.P.C. v. State, 783 So.2d 778 (¶ 11) (Miss.2001). A person guilty of aiding and abetting will be punished as a principal; he is exposed to the same sanctions as if he committed all of the criminal acts himself. Id.
¶ 14. In this case Hollins was present at the time the crime was committed, he gave the drugs to Jackson to sell to the agent and he shared in the profits from the sale. He obviously aided and abetted the crime committed. The instruction clearly informs the jury that if it finds that Hollins aided and abetted Jackson in the commission of the crime, he can be held guilty as a principal and punished as such. Although aiding and abetting was not officially part of Hollins's indictment, the evidence presented clearly supports the instruction.
¶ 15. THE JUDGMENT OF THE PEARL RIVER COUNTY CIRCUIT COURT OF CONVICTION OF SALE OR TRANSFER OF A CONTROLLED SUBSTANCE AND SENTENCE OF TWENTY FIVE YEARS WITH TEN YEARS SUSPENDED AND A FINE OF $3,000 IS AFFIRMED. COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING AND MYERS, JJ., CONCUR.